UNITED STATES of America,
Plaintiff-Appellee,

v.

Rafael PEREZ–GOMEZ,
Defendant-Appellant.

No. 79–1572.

United States Court of Appeals,
Tenth Circuit.

Jan. 12, 1981.

Robert S. Streepy, Asst. U. S. Atty., Topeka, Kan. (James P. Buchele, U. S. Atty., Topeka, Kan., with him on briefs), for plaintiff-appellant.

Ira R. Kirkendoll, Asst. Federal Public Defender, Topeka, Kan. (Leonard D. Munker, Federal Public Defender, Wichita, Kan., with him on briefs), for defendants-appellees.

Before HOLLOWAY, LOGAN and SEYMOUR, Circuit Judges.

Leonard D. Munker, Federal Public Defender, Dist. of Kansas, Wichita, Kan., for defendant-appellant.

Stephen K. Lester, Asst. U. S. Atty., Wichita, Kan. (James P. Buchele, U. S. Atty., Wichita, Kan., with him on the brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Rafael Perez-Gomez appeals a jury verdict finding him guilty of ten counts of knowingly transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(2). The issues raised on appeal are whether (1) the prosecution improperly failed to advise defense counsel of the existence of an informer, (2) the court erred in denying discovery of the identity of the informer, and (3) sufficient evidence was presented to establish that Perez-Gomez acted with knowledge of the status of the aliens.

On January 22, 1979, Immigration and Naturalization Service (INS) agents in Kansas were advised by an INS agent in California that a blue van transporting illegal aliens from Los Angeles to Chicago would stop overnight at a motel in Hays, Kansas. After being informed by local police of the arrival of the van, INS agents proceeded to an A & W Root Beer stand adjacent to the motel and observed the parked vehicle. Subsequently, Perez-Gomez emerged from one of the motel rooms, walked to the root

beer stand and ordered thirty-two hamburgers and sixteen orders of french fries to go. Perez-Gomez then took the food to two motel rooms and after a short while escorted nineteen people to the van in groups of two. An INS agent testified that the persons he observed appeared to be of Mexican descent and nervous. Perez-Gomez locked the occupants in the van and drove a short distance before being arrested by INS agents and local police. Ten men, six women, and three children were found in the back of the van, all Mexican nationals, and none able to speak English.

The principal argument for reversal is based upon the government's answer to the question on the omnibus hearing report, adopted for use in the District of Kansas by local rule, as to whether an informer was involved. The omnibus hearing report, apparently prepared by the magistrate but approved by the attorneys, indicated that there was no informer. From reading the affidavit of probable cause, defense counsel formed an opinion that an informer was involved. He then filed a motion to compel the government to disclose the existence and identity of the informer. The government replied that it would subpoena all material witnesses but did not want to reveal even the existence of an informer because such a revelation might endanger the informer or someone thought to be an informer. The court ruled that the government should indicate to the court whether an informer was used and that, if one was involved, an *in camera* hearing would be held to determine whether the informer's identity should be disclosed. Pursuant to this order, the informer's existence was revealed, and the court determined after an *in camera* proceeding that the identity need not be disclosed to defense counsel.

The government complains that the informer question on the omnibus hearing report places the government in a "no-win" situation and endangers informers and those whom defendant believes to be informers. "In order to combat this, the Government has followed the practice at Omnibus Hearings of informing the magistrate that it will subpoena all known mate-rial witnesses. Although the magistrate doesn't record this answer, the Public Defender is well aware of the practice." Appellee's brief pp. 6–7.

■ If the government attorneys gave false answers to questions on the omnibus hearing report, we unequivocally condemn that action. As an officer of the court an attorney may not knowingly make a false statement to the court or fail to disclose what he is required by law to reveal. Code of Prof. Resp. DR 7–102(A)(3) and (5). *See also id.* DR 7–106(C)(7). Of course, an attorney may openly refuse to answer the question if he seeks, in good faith, to test the validity of the disclosure rule. *Id.* DR 7–106(A). The court, of course, has ample power to redress ethical breaches committed by lawyers practicing before it.

■ Since the existence of an informer was revealed before trial, and the government as appellee does not directly challenge the legality of the local rule, we do not have before us, and do not consider, the validity of the disclosure requirement under the local rule. The question properly before us is whether error has been committed requiring reversal of this conviction. To constitute reversible error a prosecutor's nondisclosure or false statements must be of "sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976). Specifically, the government's failure to comply with its obligations under omnibus proceedings does not constitute reversible error absent a showing of prejudice. *United States v. Phillips,* 585 F.2d 745, 747 (5th Cir. 1978). Because Perez-Gomez discovered the existence of the informer prior to trial, he was no more prejudiced by the government's answer than he would have been had the government answered the omnibus report truthfully.

■ After reviewing the record of the *in camera* proceeding we have determined there is no merit in the assertion that the trial court abused its discretion by refusing to reveal the informer's identity. In mak-

ing the decision whether to reveal the identity of an informer, a balance must be struck between the public interest in protecting the flow of information and the individual's right to prepare his defense. *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957). The public's interest in concealing the identity of the informer is strong in this case. A Los Angeles INS agent testified that a continuing relationship existed between the informer and the INS, and that the informer would be instrumental in apprehending the head of the smuggling ring. It was also shown that the informer reasonably feared retaliation by Perez-Gomez.

Regarding his right to discover the informer's identity to prepare his defense Perez-Gomez asserts only that it is quite likely that the informer participated in transporting the aliens and could therefore supply relevant testimony concerning probable cause for arrest and the transaction generally. Perez-Gomez did not raise the issue of probable cause at trial or on appeal. Thus, information the informer could provide concerning probable cause is immaterial to the issue whether the informer's identity should have been revealed. *See Williams v. United States*, 399 F.2d 670 (10th Cir. 1968). The INS agent testified that the informer did not participate in the transportation of the aliens. Consequently, disclosure would not facilitate a possible entrapment defense. The agent also testified that the informer was not a material witness to the events that transpired. Perez-Gomez was caught with a van packed with illegal aliens, and it was upon the basis of this evidence and the testimony of the aliens that he was convicted. Perez-Gomez was free to call any material witnesses he wished, but he chose not to present any evidence in his defense.

■ Perez-Gomez also contends the court's *in camera* proceeding constituted an abuse of discretion because it prevented defense counsel from probing into the informer's conduct, participation, and knowledge. This Court has previously determined that an *in camera* hearing on the discoverability of an informer, conducted without the presence of the defendant or his counsel, is not an abuse of discretion. *Sandoval v. Aaron*, 562 F.2d 13 (10th Cir. 1977). The testimony received during the *in camera* hearing concerning the informer's non-participation in the events and ignorance of material facts justified the court's conclusion that disclosure would not materially aid Perez-Gomez in his defense.

■ Perez-Gomez's final contention is that insufficient evidence was presented to establish beyond a reasonable doubt that he knew the aliens he transported were in the United States in violation of the law or that the transportation was in furtherance of such violation. The trial court held that sufficient evidence existed to infer that Perez-Gomez knew he was transporting illegal aliens of recent arrival. In order to reverse the district court's holding, we must determine that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979).

Uncontradicted evidence shows that all the aliens had crossed the border within days of their journey culminating in their arrest in Kansas. Each appeared to be of Mexican descent, and none spoke English. Perez-Gomez picked up six of the aliens at a hotel in Los Angeles where they were waiting outside; he then proceeded to a house and packed in thirteen more. None of the aliens even knew defendant's name until the arresting officers mentioned it. The aliens were transported from Los Angeles to Hays, Kansas, a journey lasting 28 hours, without an opportunity to eat or to leave the van. One testified that they stayed in the van to prevent suspicion. The van had been specially designed with a partition between the driver and the passengers to prevent outsiders from observing the cargo. Perez-Gomez took care of the motel accommodations and food for the passengers. Prior to resuming the journey, Perez-Gomez escorted the passengers two at a time and locked them in the van. The evidence amply demonstrates Perez-Gomez's concern

that the aliens be kept secreted to avoid suspicion, and the transportation of the aliens from Los Angeles to Kansas, en route to Chicago, sufficiently furthers the aliens' illegal presence in the United States to meet the requirements of the statute. *See United States v. Moreno*, 561 F.2d 1321 (9th Cir. 1977).

AFFIRMED.