UNITED STATES of America, Plaintiff,

v.

Domingo SALINAS–CALDERON, Defendant.

No. 82–10080–01.

United States District Court, D. Kansas.

May 25, 1984.

---

**600**

Jack Williams, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

Antonio Ortega, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This is a trial to the Court in which the defendant, Domingo Salinas-Calderon, is charged with the unlawful transportation of six illegal aliens from Manzanola, Colorado en route to Ruskin, Florida, in violation of 8 U.S.C. § 1324(a)(2). At the close of the government's case in chief, the Court sustained the defendant's motion for judgment of acquittal on the ground that the government failed to prove beyond a reasonable doubt that the defendant's act of transporting the aliens was a willful act in furtherance of their illegal presence in the United States. Consistent with the findings made by the Court at the trial on May 16, 1984, the Court makes the following factual findings and legal conclusions.

The defendant is a Mexican nationale who last entered the United States on May

16, 1978. The defendant was not lawfully admitted to the United States and was not lawfully present here. In 1980, the defendant married a United States citizen, and he has one daughter by that marriage. Since the defendant's arrest, he has applied for United States citizenship based on his marriage to a United States citizen.

In June of 1982, the defendant was working in the onion fields near Manzanola, Colorado. Around that time he met the six Mexican nationals who he was transporting at the time of his arrest. At the end of September 1982, farm work was becoming scarce around Manzanola. Each of the undocumented workers involved in this case intended to move on to Florida to work in the berry fields. The defendant planned to drive to Florida with his family in their pickup. The defendant agreed to give his six compatriots a ride to Florida. The undocumented aliens agreed to "chip in" for gas and food. The defendant did not receive any pay or consideration for driving them to Florida.

On October 31, 1982, the defendant and his passengers were en route to Florida when they were stopped by a Kansas Highway Patrol Trooper near Howell, Kansas. The defendant was driving a pickup owned by him and his wife. His wife and daughter were riding in the front seat, and the six passengers were in the back camper portion of the pickup. There was no attempt to conceal the passengers. The defendant and passengers cooperated fully and displayed no evasive behavior when they were stopped by the trooper. The Court of Appeals for the Tenth Circuit

ruled that the stop was based on probable cause and that the statements of the defendant and the aliens were not in violation of their Fifth Amendment rights. *United States v. Salinas-Calderon,* 728 F.2d 1298 (10th Cir.1984).

■ The elements of the offense of unlawfully transporting illegal aliens under 8 U.S.C. § 1324(a)(2) [1] are: (1) the defendant transported an alien within the United States; (2) the alien was not lawfully admitted or was not lawfully entitled to enter the United States; (3) the defendant knew that the alien was not lawfully admitted or was not lawfully entitled to enter; (4) the defendant knew or had reasonable grounds to believe that the alien's last entry was within three years; and (5) the defendant acted willfully in furtherance of the alien's violation of the law. *United States v. Shaddix,* 693 F.2d 1135, 1138 (5th Cir. 1982); *United States v. Gonzalez-Hernandez,* 534 F.2d 1353, 1354 (9th Cir.1976).

The Court finds that the government met its burden on the first four elements of the offense. The question before the Court in this case is whether the defendant's act of transporting the six illegal aliens from Manzanola, Colorado en route to Florida was a willful act in furtherance of the alien's violation of the law, that is, the alien's illegal presence in the United States.

■ The language of the statute makes clear that mere transportation of an illegal alien is not sufficient to support a violation under the statute. The act must be "in furtherance of such violation of law." *United States v. Moreno,* 561 F.2d 1321, 1322 (9th Cir.1977).

1. (a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

　　*　　*　　*　　*　　*　　*

(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

　　*　　*　　*　　*　　*　　*

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: *Provided, however,* That for the purposes of this section employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

The Ninth Circuit established the standard for determining when the act of transporting is in furtherance of the alien's violation. "[T]here must be a direct or substantial relationship between that transportation and its furtherance of the alien's presence in the United States." *United States v. Moreno*, 561 F.2d 1321, 1323 (9th Cir.1977). If a defendant's act of transporting an illegal alien is only "incidentally connected" to the furtherance of the violation of law, then it is too attenuated to come within the prohibition of Section 1324(a)(2). *Id.* at 1322. In *Moreno*, a foreman who drove undocumented aliens to job sites in the regular course of the foreman's employment was charged with violating Section 1324(a)(2). The Ninth Circuit reversed the trial court's conviction of the foreman under the *Moreno* test. The Court found that the foreman's act of transporting the aliens was only incidentally connected to their illegal presence and was too attenuated to come within the proscription of Section 1324(a)(2). *Id.*

The Tenth Circuit Court of Appeals referred to the furtherance element of the transportation violation in *United States v. Perez-Gomez*, 638 F.2d 215 (10th Cir.1981). The Tenth Circuit cited *United States v. Moreno*, *supra*, apparently endorsing the standard set forth by the Ninth Circuit. *Id.* at 219. The Court in *Perez-Gomez* affirmed the district court's conviction of the defendant. The facts of *Perez-Gomez* establish that the defendant was apprehended in Hays, Kansas, while transporting 19 non-English-speaking Mexican nationales from Los Angeles, California to Chicago, Illinois. The Mexicans had entered the country within days of their departure from Los Angeles; they withstood the 28-hour journey without permission to leave the van or to eat; they did not know the name of the driver of the van; the van was specially designed to prevent outsiders from observing the cargo; the defendant arranged for the motel accommodations and food; and the defendant assisted the 19 to the van in pairs and locked the van after them each time. The Court enumerated these facts and held that they amply demonstrated that the defendant acted in furtherance of the aliens' illegal presence. *Id.* at 219 (*citing United States v. Moreno*).

The facts of the case now before the Court show that Mr. Salinas knew his passengers for about four months prior to their trip, that they worked together, and that they were on friendly terms with each other. The defendant and the aliens individually planned to go to Florida; the defendant planned to drive his family in their pickup, and he agreed to give his co-workers a ride. They shared the expense of the trip; the defendant was not compensated in any way. The vehicle was not specially designed to conceal the passengers, and there was no attempt to conceal or harbor the passengers.

■■■ Viewing this evidence, the Court cannot find beyond a reasonable doubt that the defendant acted in willful furtherance of the aliens' illegal presence in the United States. The Court notes that there was no concealment or harboring in this case. While concealment or harboring are not requisites of a transportation violation, these factors are indicative of whether the defendant acted willfully in furtherance of the aliens' illegality. The defendant clearly was not involved in a smuggling operation nor was he financially remunerated for his efforts. The defendant's passengers were friends, co-workers and companions—not cargo. The government argues that by transporting the aliens to an area where they *may* gain employment, the defendant was enabling them to remain in this country and thereby was furthering their illegal presence. The Court notes that the defendant in *Moreno* transported his passengers to a job site where they had established employment, but the Court there found that the act did not sufficiently further the aliens' illegal presence.

There must be a distinction between acts performed with the purpose of supporting or promoting an alien's illegal conduct, and acts which are incidental to or which merely permit an individual to maintain his existence, albeit his existence occurs in this country and he is not duly admitted here. Although it is arguable that transporting

the aliens to an area where they may be able to find work may further their illegal presence, the test here is whether the defendant's act of transporting was directly or substantially related to the aliens' illegal presence. The Court finds that, under the facts of this case, the defendant's act of giving the aliens a ride to Florida was not directly and substantially related to their illegal presence here, but was merely incidental to their existence here, and was too attenuated to constitute a furtherance of their illegal presence. The government failed to prove beyond a reasonable doubt that the defendant acted in willful furtherance of the aliens' illegal presence in the United States.

For the reasons stated above, IT IS THEREFORE ORDERED that the defendant's motion for judgment of acquittal be sustained.