873 F.2d 947
 57 USLW 2691
 UNITED STATES of America, Plaintiff-Appellee,
v.
1982 FORD PICK-UP, VIN 1FTDX15G7CKA31957, TEXAS LIC. NO.
VM-5394 and 1979 Chevrolet Pick-Up VIN
CCS349Z136258, Texas Lic. No. 377-8EE,
Defendants.
Appeal of Juana Ayala MENDOZA and Luis Mendoza, Claimants-Appellants.
 No. 87-6315.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 15, 1988.
Decided May 2, 1989.
 
 C. Thomas Hectus, Gittleman and Barber, J. Gregory Clare (argued), Louisville, Ky., for claimants-appellants.
 Joseph Whittle, U.S. Atty., Suzanne Warner (argued), Asst. U.S. Atty., Louisville, Ky., for plaintiff-appellee.
 Before MARTIN and JONES, Circuit Judges; and FEIKENS,* Senior District Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 This case centers around the seizure of two pickup trucks owned by Juana and Luis Mendoza by the Immigration and Naturalization Service. The trucks were allegedly used in the transportation of illegal aliens in violation of 8 U.S.C. Sec. 1324(a)(1)(B). If this is true then the trucks are subject to forfeiture under 8 U.S.C. Sec. 1324(b)(1). The Mendozas raise three issues on appeal: (1) whether immigration Service officers had the requisite probable cause to stop the Mendozas' vehicles; (2) whether the vehicles were being used to transport illegal aliens in violation of 8 U.S.C. Sec. 1324(a)(1)(B); (3) whether there were genuine issues of material fact remaining before the district court. Because we find that the Mendozas did not transport illegal aliens "in furtherance of such violation of law," 8 U.S.C. Sec. 1324(a)(1)(B), we reverse the judgment of the district court.
 
 
 2
 At the time of the incident which gave rise to this case Dewey Wotring worked as an immigration officer based in Louisville, Kentucky. On January 9, 1987, Wotring was driving back from Texas on Interstate 65, south of Louisville. He noticed five vehicles pulled to the side of the road near an area of road construction. Suspecting that the drivers might be experiencing car trouble, Wotring stopped to lend assistance. He soon discovered that none of the individuals in the cars could speak English. Wotring spoke to them in Spanish. He was told that they were coming from Texas to work in construction in Covington, Kentucky.
 
 
 3
 Wotring did not identify himself as an immigration officer. He went to the nearest telephone and called his office. He instructed officer Roy Schremp to proceed to Interstate 71 with other immigration officers and to stop the vehicles Wotring had just encountered. Wotring told Schremp to determine the legal status and nationality of the individuals in the vehicle.
 
 
 4
 Schremp and another agent, Curtis, followed Wotring's instructions. They stopped the vehicles described by Wotring on the side of the road on Interstate 71 just north of Louisville, near the Crestwood exit. Schremp questioned the individuals in the vehicles. Each admitted that he or she was a native and citizen of El Salvador. No one had any form of documentation authorizing his or her presence in the United States.
 
 
 5
 Wotring arrived shortly thereafter. The entire group then proceeded to the Immigration Service office in Louisville where more questioning took place. During this time, Juana and Luis Mendoza admitted that they knew the people in their vehicles were in the United States illegally, without any documentation authorizing their presence. The Mendozas also admitted that they transported these people from Dallas, Texas, in their vehicles.
 
 
 6
 The government brought this in rem action to obtain the forfeiture of the trucks used to transport the illegal aliens in this case. The United States filed a timely motion for summary judgment which was granted on November 4, 1987. After the court entered judgment for the government, counsel for the Mendozas informed the government that he had not received a copy of the motion for summary judgment. On December 3, 1987, the Mendozas filed a motion to set aside the summary judgment pursuant to Fed.R.Civ.P. 60(b). In this motion the Mendozas also addressed issues raised by the government in its motion for summary judgment.
 
 
 7
 On February 3, 1988, the district court denied the Mendozas' motion to set aside the summary judgment. In its original opinion granting summary judgment, the district court applied the rule of United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). In Brignoni-Ponce the Supreme Court held that a vehicle may be stopped only if the officers "are aware of specific articulable facts together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." Id. at 884, 95 S.Ct. at 2582. The court correctly found that there were a number of specific articulable facts that created reasonable suspicion in this case. Among these facts were Wotring's observations that all the individuals appeared to be of Hispanic origin, that none of the men or women spoke English, but that each individual spoke Spanish with a recognizable Salvadoran accent. They also wore huaraches and heavy tweeds, the typical dress of Central American natives. The vehicles used to transport these individuals had Texas license plates. Moreover, the individuals themselves informed Wotring that they were going to work in construction in Covington and Wotring had just completed work on a case in which illegal aliens were transported from Texas to Covington for work in construction.
 
 
 8
 In its opinion denying the Mendozas' motion to set aside the summary judgment, the district court noted that no single one of these facts was sufficient to create reasonable suspicion. It also noted, however, that under United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981) reasonableness is determined based on a consideration of the "totality of the circumstances." The court correctly found that there were a number of "specific articulable facts" which when viewed in the "totality of the circumstances" were sufficient to create a reasonable suspicion. Moreover, knowledge of these facts preceded the actual stop.
 
 
 9
 The only question of any merit raised by the Mendozas in this appeal is whether or not they used their vehicles to transport illegal aliens in violation of 8 U.S.C. Sec. 1324(a)(1)(B). For a forfeiture of the Mendozas' trucks to take place under section 1324(b)(1), the government must first establish that the Mendozas used their vehicles in violation of section 1324(a). Section 1324(a)(1)(B) (Supp. IV 1987) provides criminal penalties for anyone who:
 
 
 10
 knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves, or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.
 
 
 11
 The "violation of law" to which the provision refers is the illegal alien's continued illegal presence in the United States.
 
 
 12
 The central inquiry in applying section 1324(a)(1)(B) lies in determining whether or not transportation of the illegal aliens in this case was "in furtherance of such violation of law." In interpreting this provision we are guided by the fact that "[a]s a penal statute it must be strictly construed." United States v. Moreno, 561 F.2d 1321, 1323 (9th Cir.1977), citing McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931); United States v. Fruit Growers Co., 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739 (1929). We are also aware that in adopting the language "transportation ... in furtherance of such violation of law" Congress "placed a specific qualification on the type of transportation activity it meant to prohibit." United States v. Moreno, 561 F.2d at 1322. "[T]he mere transportation of a person known to be an alien is not sufficient to constitute a violation of the section." Id.
 
 
 13
 Courts have generaly taken two distinct approaches toward interpreting the phrase "in furtherance of such violation of law." The first approach, adopted by the Ninth Circuit in United States v. Moreno, 561 F.2d 1321 (9th Cir.1977), focuses on the effect the act of transportation has upon an alien's illegal presence. In Moreno the court held that "where transportation of such an alien occurs, there must be a direct or substantial relationship between that transportation and its furtherance of the alien's presence in the United States." Id. at 1323. Under this approach courts are to look at the "time, place, and overall impact" of the prohibited transportation. Id. The court also held, however, that where transportation of an illegal alien is "only incidentally connected to the furtherance of the violation of law," then it is "... too attenuated to come within the boundaries of Sec. 1324(a)(2)."[1] Id. at 1322. By this remark it seems that the court hoped to provide a way of distinguishing those who support the presence of illegal aliens in this country through a smuggling operation or some other form of illicit transportation from those "American citizens who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with them socially or otherwise." Id. at 1323. In applying its approach to the facts of the case, the Moreno court found that Moreno, a foreman who was required to transport workers, whom he knew to be illegal aliens, from one job site to another, did not violate the statute.
 
 
 14
 On its own terms, however, it seems that Moreno was wrongly decided. In Moreno the defendant knowingly transported illegal aliens to a job site where they had established employment. This employment supported these illegal aliens financially, provided them with the daily necessities of life and gave them hope for the future. No one could reasonably suggest that there was no "direct or substantial relationship between the transportation and its furtherance of the alien's presence in the United States" id., since this language focuses on the effect of the transportation not upon its purpose.
 
 
 15
 This only serves to demonstrate the fact that the Moreno approach is unable to distinguish between someone who knowingly smuggles illegal aliens across the country from someone who knowingly gives an illegal alien a ride to a shelter for the homeless. While appealing to common sense on a rhetorical level, the Moreno approach fails to draw any sort of principled distinction "between acts performed with the purpose of supporting or promoting an alien's illegal conduct, and acts which are incidental to or merely permit an individual to maintain his existence, albeit his existence occurs in this country and he is not duly admitted here." United States v. Salinas-Calderon, 585 F.Supp. 599, 602 (D.Kansas), rev'd on other grounds, 728 F.2d 1298 (10th Cir.1984).[2] The reason for this failure is because the approach focuses on the effect of the transportation of the illegal alien and not upon its purpose.
 
 
 16
 The second approach used to interpret the phrase "in furtherance of such violation of law" does focus on the intent of those persons accused of transporting illegal aliens. In United States v. Gonzalez-Hernandez, 534 F.2d 1353, 1354 (9th Cir.1976) the Ninth Circuit read what is now section 1324(a)(1)(B) as being composed of five elements. The fifth element requires that the "appellant acted willfully in furtherance of the alien's violation of the law." Id. at 1354. That is, a person must act so as to deliberately assist an alien in maintaining his or her illegal presence. To be found guilty of violating section 1324(a)(1)(B) the government must prove that the defendant transported an alien with the purpose of supporting or promoting his or her illegal presence.
 
 
 17
 The Fifth Circuit recently adopted and clarified this intent-based approach in United States v. Merkt, 764 F.2d 266 (5th Cir.1985). In Merkt the court reversed the conviction of Stacey Merkt, a refugee worker accused of violating section 1324(a)(1)(B). Merkt was stopped by the border patrol while enroute to the San Antonio INS office with two illegal aliens from El Salvador. The court noted that "[w]illful transportation of illegal aliens is not, per se, a violation of the statute...." Id. at 272. Because "[t]he statute ... punishes only an intentional act," id., it is the government's burden "to establish the defendant's state of mind ... like every other element of the alleged crime, beyond a reasonable doubt." Id. The fact that "it is difficult to establish that a defendant acted with the specific intent necessary to establish a violation of the section" does not warrant eliminating one of the essential elements of the offense. Id.
 
 
 18
 In discerning intent, the Merkt court found a court or a jury should "consider all evidence it finds credible about [the defendant's] intentions, direct as well as circumstantial." Id. This means that the court may, for example, look to see whether the defendant was compensated for the transportation, and what efforts the defendant took to conceal or harbor the illegal aliens. See United States v. Perez-Gomez, 638 F.2d 215, 218-19 (10th Cir.1981). It may also consider whether the illegal aliens were friends, co-workers, or companions of the defendant, or merely human cargo that was being shipped. See Salinas-Calderon, 585 F.Supp. 599, 602 (D.Kansas 1984).
 
 
 19
 The government may not obtain a forfeiture under section 1324(b)(1) pursuant to a violation of section 1324(a)(1)(B) unless it proves that the defendant willfully transported an illegal alien with the specific intent of supporting the alien's illegal presence. The government failed to prove such a purpose in this case nor can it be found anywhere in the record. Indeed, the record indicates that the Mendozas' actions were quite innocent. The Mendozas made no attempt to hide their passengers or otherwise conceal the fact that they were illegal aliens. The Mendozas received no financial remuneration for helping their passengers move to Kentucky. These people, while undoubtedly illegal aliens, were also friends, relatives and former co-workers of the Mendozas. They sought transportation to Kentucky in hopes of finding employment, not in order to escape prosecution or otherwise evade the law. The purpose of the Mendozas' transporting the aliens from Texas to Kentucky was not to support their illegal presence, though that may have been the ultimate effect of their actions. Their purpose was to promote the well-being of friends and relatives by helping them obtain employment. Consequently, the government may not obtain a forfeiture of the Mendozas' vehicles.
 
 
 20
 The judgment of the district court is reversed.
 
 
 21
 FEIKENS, District Judge, dissenting.
 
 
 22
 In this case, the Court decides that Juana and Luis Mendoza did not violate 8 U.S.C. Sec. 1324(a)(1)(B) when they transported known illegal aliens from Texas to Kentucky for the admitted purpose of getting the aliens construction jobs in Covington, Kentucky. This journey was prompted by Luis Mendoza's relocation of his construction company to Covington. Brief for Claimants-Appellants, Juana Alaya Mendoza and Luis Mendoza at page 1. The Court finds that no violation occurred because the Mendozas did not specifically intend to support their passengers' illegal presence in the United States; the Mendozas merely meant to promote the illegal aliens' well-being here. I respectfully dissent from this portion of the Court's opinion.
 
 
 23
 8 U.S.C. Sec. 1324 creates criminal penalties for:
 
 
 24
 (1) Any person who--
 
 
 25
 (B) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;
 
 
 26
 8 U.S.C. Sec. 1324(a)(1)(B).
 
 
 27
 This statute explicitly requires one mental element, i.e., defendants must have known or recklessly disregarded their passengers' illegal status. Defendants admit that they knew that their passengers were in the United States illegally. Now the majority adds a second mental requirement to Sec. 1324; defendants must also have specifically intended to further their passengers' presence in the United States.
 
 
 28
 The majority says that United States v. Merkt, 764 F.2d 266 (5th Cir.1985) adopted and clarified the intent-based approach, which the majority now implements. However, Merkt is not a precedent for the type of intent requirement which the majority adds to Sec. 1324. Defendant Merkt argued that she had been stopped while driving illegal aliens to an INS office, for the purpose of helping them apply for political asylum. Id. at 270. In reversing the district court's intent instruction, the Fifth Circuit stated:
 
 
 29
 If the jury should find as a fact that Merkt intended to present the aliens to the proper officials so that they could seek legal status in this country, it should find that she did not have the requisite criminal intent necessary for a conviction under Sec. 1324. By definition, a person intending to assist an alien in obtaining legal status is not acting 'in furtherance of' the alien's illegal presence in this country.
 
 
 30
 United States v. Merkt, supra, 764 F.2d at 272. Merkt's intent-based inquiry does not resemble the instant case. The Fifth Circuit did not adopt a general intent test. It limited its holding to the unique facts before it.
 
 
 31
 I also respectfully disagree with the majority's application of its intent test. By transporting illegal aliens for the admitted purpose of getting construction jobs for them, defendants clearly intended to further the aliens' illegal presence. Notwithstanding its acknowledgment that employment can support aliens financially, providing them with daily necessities and hope, thereby furthering the aliens' illegal presence here, the majority finds that defendants did not intend to further their passengers' presence in the United States. I disagree. I find that Juana and Luis Mendoza intended to further the aliens' illegal presence when the Mendozas drove them across the country for the purpose of getting them construction work in Covington.
 
 
 32
 The majority relies on several factors to help it erroneously conclude that defendants did not intend to further their passengers' presence here. These factors include: the facts that defendants were related to some of their passengers, defendants did not harbor or conceal their passengers, and defendants did not conceal their passengers' illegal status or require payment for the transportation. These factors are irrelevant to the question whether defendants intended to further the aliens' presence. Because the Court has taken these factors out of context, it has reached a wrong result.
 
 
 33
 The Court has cited United States v. Perez-Gomez, 638 F.2d 215 (10th Cir.1981), as the first source of the factors on which it now relies. That case, however, used the concealment and harboring factors to determine whether Perez-Gomez had "... acted with knowledge of the status of the aliens" he had transported. Id. at 216 (emphasis added). The fact that Perez-Gomez had attempted to conceal his passengers was relevant to the question of whether he knew they were in the United States illegally. In contrast, concealment casts no light on the question whether the Mendozas intended to further their passengers' presence in the United States. Taken out of context in this way, the Perez-Gomez factors make no sense in this case.
 
 
 34
 The majority's second source of factors is United States v. Salinas-Calderon, 585 F.Supp. 599 (D.Kansas 1984) rev'd on other grounds, 728 F.2d 1298 (10th Cir.1984). The judge in that case also misunderstood Perez-Gomez, supra. The district court in Salinas-Calderon believed that, "The [Perez-Gomez ] Court enumerated these facts [regarding concealment and harboring] and held they amply demonstrated that the defendant acted in furtherance of the aliens' illegal presence (citations omitted)". Id. at 602.
 
 
 35
 After enumerating these factors, however, Perez-Gomez stated that:
 
 
 36
 The evidence amply demonstrates Perez-Gomez's concern that the aliens be kept secreted to avoid suspicion, and the transportation of the aliens from Los Angeles to Kansas, en route to Chicago, sufficiently furthers the aliens' illegal presence in the United States to meet the requirements of the statute. See U.S. v. Moreno, 561 F.2d 1321 (9th Cir.1977).
 
 
 37
 United States v. Perez-Gomez, supra, 638 F.2d at 218-19. The Court in Perez-Gomez held that by concealing and harboring aliens, the defendant demonstrated his concern for avoiding suspicion and therefore his knowledge of his passengers' illegal status. Transporting aliens across the country satisfied the furtherance requirement in Perez-Gomez. The Court in Salinas-Calderon mistakenly thought that Perez-Gomez had used these factors regarding concealment to decide whether Perez-Gomez had furthered his passengers' presence. The majority now makes a similar mistake.
 
 
 38
 The majority has relied on factors designed to test a defendant's knowledge of his passengers' illegal status, to decide whether the Mendozas intended to further their passengers' presence. By applying irrelevant factors taken out of context, the majority has reached the wrong conclusion.
 
 
 39
 Reliance on these factors only makes sense in the present context if the majority is attempting to distinguish those defendants involved in "a smuggling operation or some other form of illicit transportation from those 'American citizens who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with them socially or otherwise.' " At page 950, citing U.S. v. Moreno, 561 F.2d 1321, 1323 (9th Cir.1977). This inquiry impermissibly collapses the statutory elements of Sec. 1324. This statute does not only apply to defendants who further an alien's presence by running a smuggling operation. Such conclusory labelling avoids the broader, and admittedly harsher, considerations which Sec. 1324 imposes upon this Court.
 
 
 40
 Rather than adding a new intent requirement to Sec. 1324 as the majority has done, I would look to the clear language of the statute. Section 1324(a)(1)(B) prohibits the transportation of those known to be illegal aliens. This transportation must further the illegal alien's presence in the United States. While not all transportation in the employment context furthers an alien's presence, U.S. v. One 1982 Toyota Sr 5 Pick-Up, 642 F.Supp. 335, 337 (N.D.Illinois 1986), citing U.S. v. Fierros, 692 F.2d 1291, 1295 (9th Cir.1982), cert. denied, 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983), transportation to jobs must be carefully examined. As the majority notes, employment furthers an alien's presence here.
 
 
 41
 The Mendozas took these illegal aliens to Covington to get them construction jobs. They went to Covington because Luis Mendoza relocated his construction company there. See Brief for Claimants-Appellants, supra, at page 1. These facts clearly imply that the Mendozas transported the aliens to work for this company.
 
 
 42
 An employer's offer of employment to known illegal aliens, combined with the transportation of aliens, sufficiently furthers their presence to violate Sec. 1324(a)(1)(B)'s predecessor, Sec. 1324(a)(2). United States v. Shaddix, 693 F.2d 1135, 1139 (5th Cir.1982). See also United States v. One 1985 Ford F-250 Pickup, 702 F.Supp. 1304, 1307-08 (E.D.Mich.1988). (The fact that the defendant played a significant role in arranging and providing for employment of illegal aliens would, if proved, indicate that defendant furthered the aliens' presence.) If the Mendozas did intend to employ the aliens in Covington, under U.S. v. Shaddix, supra, they furthered the aliens' presence in the United States. Even in the unlikely event that the Mendozas did not harbor this intention, I find that they furthered the aliens' presence by driving them across the country for the purpose of getting them construction work in Covington. I would affirm the district court's grant of summary judgment for plaintiff.
 
 
 
 *
 The Honorable John Feikens, United States District Court Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Section 1324 has been amended since Moreno was decided. What was then section 1324(a)(2) is now section 1324(a)(1)(B). Pub.L. 99-603, Sec. 112, 100 Stat. 3381 (1986). The government argues that this change makes those cases decided before the amendment inapposite. This argument fails, however, since the amendment did not change the operative language "in furtherance of such violation of law." See also United States v. Morales-Rosales, 838 F.2d 1359, 1361 (5th Cir.1988)
 
 
 [2]
 In Salinas-Calderon the district court found that the defendant did not violate section 1324(a) by giving several friends, whom he knew to be illegal aliens, a ride with his family on vacation. They were travelling from Colorado to Florida, where the illegal aliens hoped to find work. The court, ostensibly following Moreno, reasoned that "the defendant's act of giving the aliens a ride to Florida was not directly and substantially related to their illegal presence, but was merely incidental to their existence here, and was too attenuated to constitute a furtherance of their illegal presence." 585 F.Supp. at 603. Such a result, however, runs contrary to the plain meaning of Moreno. It seems instead that the court actually applied an intent-based approach as is discussed, infra