**UNITED STATES of America, Plaintiff,**

v.

**Martin BARAJAS–CHAVEZ, Defendant.**

**No. CR. 96–174–MV.**

United States District Court,
D. New Mexico.

Dec. 31, 1996.

---

7. Defendant's Exhibits B and C.

Lauren Mickey, Assistant U.S. Attorney, Las Cruces, NM, for Plaintiff.

Floyd Lopez, Albuquerque, NM, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

VAZQUEZ, District Judge.

**THIS MATTER** came before the Court on Defendant's Motion to Dismiss Indictment for Impermissible Variance and Motion for Judgment of Acquittal filed August 19, 1996 **[Doc. No. 75]**. The Court, having considered all motions, responses, memorandums, and being otherwise fully advised, finds that Defendant's Motion for Judgment of Acquittal is well-taken and will be granted. As granting this Motion is dispositive of the case, the Court does not consider Defendant's Motion to Dismiss Indictment for Impermissible Variance, Defendant's Motion to Strike Government's Response to Defendant's Motion to Dismiss Indictment for Impermissible Variance and Motion for Judgment of Acquittal filed September 25, 1996 **[Doc. No. 81]** and Government's Motion for Revocation of Order of Release filed November 22, 1996, **[Doc. No. 89]**.

### LEGAL ANALYSIS

Defendant was tried before a jury on two counts of transporting illegal aliens in violation of 8 U.S.C. § 1324. At the close of the Government's case in chief and at the close of all the evidence, Defendant moved for judgment of acquittal on the ground that there was insufficient evidence to support the charge of transporting illegal aliens. The Court took the motion under advisement. Defendant was subsequently convicted by the jury on both counts.

■ This Court, in considering a motion for judgment of acquittal under Fed. R.Crim.P. 29, must "view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. Johnson, et al.*, 12 F.3d 1540, 1545 (10th

Cir.1993) (citing *United States v. White*, 673 F.2d 299, 301–302 (10th Cir.1982)).

■ The five essential elements of the crime of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(2) are: (1) the defendant transported an alien within the United States; (2) the alien was in the United States in violation of law; (3) this was known to the defendant; (4) the defendant knew or had reasonable grounds to believe that the alien's last entry into the United States was within the last three years; and (5) defendant acted willfully in furtherance of the alien's violation of the law. *See United States v. Shaddix*, 693 F.2d 1135, 1137–1138 (5th Cir.1982).

■ Defendant Barajas–Chavez' Motion for Acquittal is based on the "in furtherance of" language contained in the fifth factor. Defendant contends that there was insufficient evidence to support his conviction with respect to this statutory element.

■ The statute does not delineate the specific circumstances that must exist before an act of transporting an undocumented alien is "in furtherance of" the violation of the law. In interpreting this provision courts are guided by the fact that "[a]s a penal statute it must be strictly construed." *United States v. Moreno*, 561 F.2d 1321, 1323 (9th Cir. 1977), citing *McBoyle v. United States*, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931).

■ It is clear that mere transportation of a person known to be an alien is not sufficient to constitute a violation of the section. The Tenth Circuit recognized that "mere transportation of an illegal alien is, without more, insufficient as a matter of law to support a conviction under this statute," *United States v. Chavez–Palacios*, 30 F.3d 1290, 1294 (10th Cir.1994), but left open exactly what constitutes in furtherance of the alien's violation of the law under § 1324(a)(2).

■ The Ninth Circuit established the standard for determining when the act of transporting is in furtherance of the alien's violation. "[W]here the transportation of such an alien occurs, there must be a direct or substantial relationship between that transportation and its furtherance of the

alien's presence in the United States." *Moreno,* 561 F.2d at 1323. If transportation of the aliens is "only incidentally connected to the furtherance of the violation of law," it is "too attenuated to come within the boundaries of § 1324(a)(2)." *Id.* at 1322. In making this statement, the court appears to have been trying to distinguish those who support the presence of illegal aliens in this country through a smuggling operation or some other form of illicit transportation from those "who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with them socially or otherwise." *Id.* at 1323.

This standard has been cited with approval and elaborated on in other cases. In *United States v. One 1982 Toyota SR 5 Pick-up Truck,* 642 F.Supp. 335 (N.D.Ill. 1986), the court wrote that "[t]he direct or substantial relationship test requires that courts distinguish between acts which are geared more toward surreptitious or furtive transportation of undocumented aliens which inhibits government enforcement of immigration laws and more attenuated incidents involving minimal employment-related transportation." *Id.* at 337.

■ Relevant considerations bearing on whether the transportation was in "furtherance of" include "whether the defendant received compensation for his transportation activity, whether the defendant took precautionary efforts to conceal the illegal aliens, and whether the illegal aliens were the defendant's friends or co-workers or merely human cargo." *United States v. Parmelee, et al.,* 42 F.3d 387, 391 (7th Cir.1994).

The facts in the instant case reveal that Defendant did not receive compensation for transporting the two passengers, Mr. Lopez–Arrellano and Mr. Macias–Lopez. The evidence demonstrated that the passengers contributed money to cover the expenses of the trip but did not otherwise compensate Defendant. Mr. Lopez–Arrellano testified that he planned to help Defendant with expenses on the trip and that he contributed approximately $50.00 for gas. Mr. Lopez–Arrellano owned his own car at the time and could have driven himself to Denver but rode with Defendant for companionship and to share expenses.

Mr. Macias–Lopez testimony on payment was unclear from the record. He stated on direct examination that he had agreed to contribute $150.00 to be used to purchase a vehicle in Denver but that he had not paid the Defendant. On cross-examination he testified that he gave the Defendant $150.00. Defendant testified that he received $50.00 from Mr. Macias–Lopez for gas at the beginning of the trip. Viewing the evidence in the light most favorable to the Government requires this Court to find that Mr. Macias–Lopez paid Defendant $150.00 for transportation to Denver.

Even if the jury found this witness credible, the fact that Mr. Macias–Lopez may have paid $150.00 to Defendant for the ride to Denver does not indicate Defendant transported the passenger for profit. Transportation expenses include insurance, licensing, taxes, oil, gasoline and wear and tear on the vehicle. Given the distance from Phoenix to Denver, $150.00 is not an amount in excess of travel expenses such that it would indicate Defendant transported the passenger for profit.

■ The evidence at trial also indicated that Defendant did not take any precautionary efforts to conceal the illegal aliens. "While concealment or harboring are not requisites of a transportation violation, these factors are indicative of whether the defendant acted willfully in furtherance of the aliens' illegality." *U.S. v. Salinas–Calderon,* 585 F.Supp. 599, 602 (D.Kan.1984). Neither of the immigration agents testified that Defendant was evasive or furtive when stopped or questioned.

One agent did testify that the windows in the camper shell were tinted or darkened and that the passengers in the bed of the truck were lying down when it was stopped. The evidence indicates that it was approximately three o'clock in the morning when the stop was made and that some of the passengers, including several children, were asleep in the bed of the truck. Given the time of the incident, the fact that several passengers were riding in the cab, the testimony that Defendant was not furtive or evasive, evidence that the passengers freely moved about during stops for gas and dinner, and

testimony that the windows of the camper shell were already tinted at the time Defendant purchased it at a yard sale, the Court finds no inference of concealment or harboring in this case.

The relationship between Defendant and his passengers strongly refutes any inference that the passengers were "human cargo." Testimony revealed that the two passengers were the Defendant's relative and an acquaintance of the relative, both of whom individually planned to go to Denver. Mr. Lopez–Arrellano is a relative, neighbor, and close friend of the Defendant.

Mr. Macias–Lopez's relationship to Defendant and Mr. Lopez–Arrellano is not entirely clear from the record. Mr. Macias–Lopez apparently lived near Mr. Lopez–Arrellano in Arizona and frequented the same park where Mr. Lopez–Arrellano played football. Mr. Lopez–Arrellano referred to him in his testimony as a companion because he had not known him long enough to call him a friend. While Mr. Macias–Lopez and Defendant were not close friends, and in fact had only met once before, Mr. Macias–Lopez was an acquaintance of Defendant's other passenger, Mr. Lopez–Arrellano. Mr. Macias–Lopez and Mr. Lopez–Arrellano, as a relative and an acquaintance, were clearly not "human cargo" being transported for profit.

The facts in this case are nearly identical to those in *Salinas–Calderon*. In *Salinas–Calderon* the defendant, an illegal alien, was driving from Colorado to Florida to seek work in the berry fields. The defendant agreed to give six co-workers whom he had known for about four months a ride to Florida so they could also seek work in the berry fields. The co-workers agreed to "chip in" for gas and food but the defendant was not compensated in any way. The co-workers rode in the back camper portion of defendant's truck and there was no attempt to conceal the passengers. The defendant and the passengers cooperated fully and displayed no evasive behavior when stopped.

The court noted that "[t]here must be a distinction between acts performed with the purpose of supporting or promoting an alien's illegal conduct, and acts which are incidental to or which merely permit an individual to maintain his existence, albeit his existence occurs in this country and he is not duly admitted here. Although it is arguable that transporting the aliens to an area where they may be able to find work may further their illegal presence, the test here is whether the defendant's act of transporting was directly or substantially related to the aliens' illegal presence." *Salinas–Calderon*, 585 F.Supp. at 602–603. The court found that the defendant's act of giving co-workers a ride to Florida to seek employment was "merely incidental to their existence here, and was too attenuated to constitute a furtherance of their illegal presence." *Id.* at 603.

Other courts have also held that transportation in the employment context is not "in furtherance of" a violation of the law. In *One 1982 Toyota SR 5 Pick–up Truck*, the court rejected the government's argument that any transportation in the employment context is "in furtherance" of the alien's unlawful presence because it enables him to maintain employment. In rejecting this position, the court stated that "[t]he case law on this matter overwhelmingly supports the position that not all knowing transportation of known undocumented aliens in the employment context is 'in furtherance' of the alien's unlawful presence in the United States. Rather there must be a 'direct or substantial relationship' between the act of transportation and the furtherance of the alien's unlawful presence." *One 1982 Toyota SR 5 Pickup Truck*, 642 F.Supp. at 337 (internal cites omitted).

This case is distinguishable on several grounds from *U.S. v. Chavez–Palacios*, 30 F.3d 1290 (10th Cir.1994). In *Chavez–Palacios* the Tenth Circuit found that the defendant acted "in furtherance of" when he knowingly transported illegal aliens to Denver so that the aliens could attempt to find work there. The evidence in that case revealed, among other factors, that the offense was committed for profit and that the defendant attempted to conceal the passengers. The opinion does not reveal the relationship, if any, between the aliens and the defendant or if the defendant independently planned a trip to Denver or made the trip solely to transport the aliens for profit.

## CONCLUSION

■ It is not uncommon for those with limited means, whether college students, family, co-workers, or acquaintances, to arrange to travel together and share expenses. Merely sharing transportation and expenses to a common destination does not establish a "direct or substantial relationship between that transportation and its furtherance of the alien's presence in the United States." *Moreno*, 561 F.2d at 1323.

In this case Defendant, Defendant's relative, and an acquaintance of Defendant's relative, were driving to Denver in search of employment. This was not a furtive transportation of undocumented aliens which inhibits government enforcement of immigration laws but was an act merely incidental to the aliens' presence here and is too attenuated to constitute a furtherance of their illegal presence. Specifically, the Court finds that the relationship between Defendant and the passengers, the fact that the transportation was not committed for profit, and the lack of furtiveness or concealment indicate that this transportation was not "in furtherance" of the aliens' violation of the law. The evidence, when viewed in the light most favorable to the Government, does not support the jury's verdict.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Acquittal, filed August 19, 1996 [**Doc. No. 75**] is **GRANTED**.