*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0119p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MORHAY TAPUCU,

> *Petitioner,*

*v.*

> No. 03-3674

ALBERTO GONZALES, U.S. Attorney General,

> *Respondent.*

On Appeal from the Board of Immigration & Naturalization Service.
No. A41 956 347.

Argued: December 3, 2004

Decided and Filed: March 9, 2005

Before: GILMAN and SUTTON, Circuit Judges; McKEAGUE, District Judge.[*]

---

## COUNSEL

**ARGUED:** Stanley J. Horn, AZULAY, HORN & SEIDEN, Chicago, Illinois, for Petitioner. Anh-Thu P. Mai, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Stanley J. Horn, AZULAY, HORN & SEIDEN, Chicago, Illinois, for Petitioner. Mary Jane Candaux, Margaret J. Perry, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

SUTTON, J., delivered the opinion of the court, in which GILMAN, J., joined. McKEAGUE, D. J. (pp. 8-9), delivered a separate dissenting opinion.

---

## OPINION

---

SUTTON, Circuit Judge. In January 1995, Morhay Tapucu, a citizen of Turkey and a lawful permanent resident of the United States, went on a weekend-long road trip to Toronto with three of his friends from Chicago. The group of four rented a van for the trip and shared driving responsibilities on the way there and on the way back. Upon returning to the American border at the end of the weekend, immigration officers stopped the car and asked the four men to go into the office to answer questions about their admissibility. The officers determined that one of the friends, Kirkor Deveci, a Canadian citizen, did not have authority to re-enter the country. They then concluded that Tapucu was a "smuggler" of aliens because he had "knowingly [ ] encouraged, induced, assisted, abetted, or aided any other alien to enter or

---

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

to try to enter the United States in violation of law." 8 U.S.C. § 1182(a)(6)(E)(i). The two other friends were allowed to re-enter the country. Tapucu violated the anti-smuggling provision, the officers claimed, because he happened to be the driver at the time the car reached the border and because Tapucu did not correct Deveci when Deveci told the officers that he lived in Canada.

In a two-page opinion bereft of any citation to relevant case law, the Immigration Judge (IJ) concluded that Tapucu was a smuggler of aliens and ordered him excluded from the United States. One member of the Board of Immigration Appeals summarily affirmed the order without opinion. While we generally give broad deference to the agency over these decisions, we cannot defer to this one. Tapucu did not "knowingly . . . assist[] . . . [an] alien . . . to enter the United States in violation of law"—first, because he testified that he thought Deveci could lawfully re-enter the country (and no one questioned that testimony or its credibility) and, second, because the anti-smuggling statute requires something more than openly presenting an alien to border officials with accurate identification and citizenship papers. We accordingly vacate the decision of the immigration judge and remand the case for additional proceedings consistent with this opinion.

I.

Tapucu was born in Elazig, Turkey, in 1959 and has been a lawful permanent resident of the United States since 1988. His wife is an American citizen and so is his son. For some time, he has owned a jewelry business in Chicago.

On January 27, 1995, Tapucu and three friends left Chicago, Illinois, in a rented van to attend a party in Toronto, Canada. The four friends shared driving responsibilities during the trip. Upon returning to the American border on January 29, 1995, immigration officers stopped the van at the inspection point in Windsor, Canada. Tapucu was driving at the time. The officers asked Tapucu and his friends to exit the van and to proceed inside to allow the officers to inspect their documents.

Once inside, the officers interviewed the passengers and eventually obtained sworn written statements from Tapucu and Deveci. The officers denied entry to Deveci because he was a Canadian citizen who did not reside in Canada but was living illegally in Chicago. During the interviews with the officers, Tapucu said that he knew Deveci had been living illegally in the United States for two years, that he had employed him in the past and that Deveci's family had applied for permanent residence status for him. In answering why he thought Deveci could re-enter the country, he explained that Deveci had done so before. After taking these statements, the immigration officers paroled Tapucu into the United States pending a hearing on his admissibility. The officers allowed the two other friends to enter the country without restriction.

While the IJ did not hear any live testimony at the hearing on Tapucu's petition, it did receive the sworn statements given by Tapucu and Deveci at the border, affidavits from Tapucu and Deveci, a copy of Deveci's birth certificate, and copies of Tapucu's marriage certificate and the birth certificate of his son. On January 12, 1999, the IJ issued a decision concluding that Tapucu had violated the anti-smuggling provision. *See* 8 U.S.C. § 1182(a)(6)(E)(i). In the IJ's view, clear and convincing evidence established that Tapucu had smuggled Deveci into the country because he was driving the van at the time it reached the border, because Tapucu knew that Deveci was living illegally in the United States and because Tapucu failed to correct Deveci's misstatement to the officers that he had a residence in Toronto, Canada. Deploying the summary-affirmance procedure of the Board of Immigration Appeals, a single member of the Board affirmed the IJ's decision without opinion on April 10, 2003.

II.

When the Board summarily affirms an IJ's order, it is the decision of the IJ that we review. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). We review the IJ's legal conclusions de novo and the IJ's factual findings for substantial evidence. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

Under 8 U.S.C. § 1182(a)(6), "[i]llegal entrants" to the United States and "immigration violators" may not be admitted into the United States. The provision lists two types of "[i]llegal entrants": (1) "[a]liens present without admission or parole," *id.* at (6)(A), and (2) "[s]towaways," *id.* at (6)(D) ("[a]ny alien who is a stowaway is inadmissible"). And it lists three types of "immigration violators": (1) those who "[f]ail[] to attend removal proceeding[s]" regarding their potential inadmissibility or deportability, *id.* at (6)(B); (2) those who make "[m]isrepresentation[s]" of "material fact[s]" in seeking admission to the United States, *id.* at (6)(C); and (3) "[s]mugglers" of illegal aliens into the country, *id.* at (6)(E).

In claiming that Tapucu could not be readmitted to the United States, the government invoked the "smuggler" provision. That subsection reads in pertinent part:

(E) Smugglers.

(i) In general. Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible.

8 U.S.C. § 1182(a)(6)(E). Because Tapucu was a lawful permanent resident of the United States, the government had to establish that Tapucu was a "smuggler" of an illegal alien—namely, of Kirkor Deveci—by "clear, unequivocal, and convincing evidence." *Woodby v. INS*, 385 U.S. 276, 286 (1966). The government did not meet this burden.

*First*, the words of the statute do not support the IJ's decision. *Some* of the statutory language, it is true, perhaps supports the IJ's decision—in the sense that one might say that Tapucu "assist[ed]" an "alien to enter or to try to enter the United States" by being the driver of the car at the time it reached the customs office at the American-Canadian border in Windsor, Canada. Though as for that, one has to wonder why a road trip in a rented van, in which the driving and expenses are shared equally by four individuals, means that Tapucu provided any more "assist[ance]" to the re-entry than Deveci himself or for that matter than either of the other two individuals on the trip. But that is a mere quibble when compared to our broader objection to the government's reading of the statute.

The government makes no suggestion that Tapucu "encouraged" or "induced" Deveci to enter the country illegally, so it must show that Tapucu "*knowingly* . . . assisted . . . [an] alien *to enter* or to try to enter the United States *in violation of law*." (Emphasis added.) Far from showing that Tapucu knowingly assisted an illegal entry, the unvarnished facts show just the opposite—that Tapucu did not commit a single affirmative act designed to assist an illegal effort by Deveci to cross the border and that indeed Tapucu thought Deveci legally could re-enter the country.

Consider what happened before the men entered the immigration facility. When the four individuals reached the border, there were no hidden compartments in the car, no hidden passengers, no doctored documents, no effort to cross the border at a place where there were no border guards and no other affirmative act by Tapucu to cross the border surreptitiously. To the contrary, the four individuals did what legal travelers between the United States and Canada customarily do: They approached the border crossing; they handed the guard their papers; and they waited for the guard's response. When the guard asked them to go inside to answer additional questions, they did just that.

While the answers to those questions revealed that three of the passengers had authority to enter but the fourth (Deveci) did not, it is difficult to see how Tapucu had done anything to interfere with the proper enforcement of the immigration laws regarding who may enter the country. Up to this point, Tapucu no more assisted the illegal re-entry of an alien—by the happenstance of being the current driver of the car—than he assisted the government in preventing the re-entry. The immigration laws generally do not discourage aliens or their traveling partners from directly presenting themselves to immigration officials with authentic papers upon reaching the border.

Not quite true, the government responds. Tapucu was not an innocent because he acknowledged that he knew that Deveci was living illegally in the United States and had hired him in the past to work as a diamond setter in his jewelry business. But his candor on this point should have led the government and the IJ to credit his other testimony—that Deveci's family had filed an application for permanent-legal-residence status, that he thought Deveci (as a Canadian citizen) could enter the United States freely and that he knew Deveci had gone back and forth between Canada and the United States many times before. *Cf.* 22 C.F.R. § 41.2(a) (waiving passport and visa requirements for Canadian nationals seeking entry as nonimmigrants). The fact that Tapucu knew Deveci could not stay permanently in the country (at least until his application was granted) fails to prove that Tapucu knew he could not enter the country—particularly in view of the fact that Tapucu testified to just the opposite conclusion and in view of the fact that the IJ never questioned the credibility of (or for that matter even explored) his statement on this point. And Tapucu's knowledge of Deveci's status in this country assuredly does not prove that Tapucu knowingly assisted Deveci's illegal re-entry merely by being the hapless driver at the time they reached the border—a conclusion with which the United States Department of State appears to agree. *See* 9 U.S. Department of State Foreign Affairs Manual § 40.65 n.4 (1995) (interpreting "knowingly" in § 1182(a)(6)(E): "[I]n order to be found ineligible . . . the 'smuggler' must act with intention of encouraging or *assisting the alien to achieve the illegal entry*. Therefore, belief that the alien was entitled to enter legally, although mistaken, would be a defense to ineligibility for a suspected 'smuggler.'") (emphasis added). What, one wonders, is illegal about driving a known illegal alien with admittedly authentic papers to the American border for examination by the border guards? The Department of Homeland Security, we suspect, does not devote a considerable amount of resources to correcting *this* problem.

*Second*, these facts stray still further from the word, "smuggler," which Congress used in captioning this provision, which the Board of Immigration Appeals uses in describing it and which is what the relevant words of the prohibition ("knowingly . . . assist[ing] [an] alien to enter . . . in violation of law") describe. *See In re Compean-Guevara*, 21 I. & N. Dec. 51, 52 (BIA 1995) (referring to the provision as "dealing with the inadmissibility of alien smugglers"). "Smugglers" "import or export *secretly* contrary to law" or "bring in[] or take out . . . (merchandise, forbidden articles, or persons) contrary to law *and with a fraudulent intent*," Webster's Third New International Dictionary 2153 (2002) (emphasis added), which is a far cry from what Tapucu did. Whether as a matter of sheer common sense or the utmost sophistication, there was nothing illicit or secret about Tapucu's actions at the border—nothing, in short, that calls to mind "smuggling."

Attempting to counter this conclusion, the government protests what did *not* happen once the four travelers were inside the immigration facility—namely, that Tapucu did not speak up when Deveci told immigration officials that he lived in Canada. But Tapucu's inaction occurred in response to a question by immigration officials to Deveci, not to Tapucu. One does not "smuggle" by declining to correct what appears to be an inaccurate statement by another individual in response to a question not addressed to the alleged smuggler. In fact, one of the other two passengers in the van, Hagop Dirilien, stated in his affidavit that he also was present when Deveci lied about his residence, yet officials admitted Dirilien into the United States without reservation. Like Dirilien, Tapucu never affirmatively said or did anything to bolster Deveci's efforts to re-enter. Indeed, when the immigration officials turned their questions to Tapucu, he answered them truthfully and acknowledged that Deveci was an illegal alien. If this counts as "smuggling," the net is wide and the water is far from deep.

*Third*, the history of this legislation bolsters this interpretation. Prior to 1990, the smuggling provision applied to those who knowingly assisted the illegal entry of aliens "for gain." Congress removed the "for gain" language through the passage of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, and according to the State Department did so for the understandable reason that the "for gain" requirement had created difficult proof problems for the government—when, for example, the government intercepted the smugglers before any payment had been made or when the fact of compensation otherwise became hard to prove. *See* 9 U.S. Department of State Foreign Affairs Manual § 40.65 n.7 (1995) ("Elimination of the 'for gain' element obviates the necessity to establish the expectation or receipt of profit

as an element of a finding of ineligibility."). No doubt, this amendment to the statute makes it easier to prove smuggling and in this respect broadens the statute's reach. But even after the amendment the provision still requires an affirmative and illicit act of assistance in shepherding someone across the border. Put another way, the statute still requires the would-be smuggler to commit a compensable act—to do something for which remuneration reasonably *could* be made even if it need not be proved. No such act occurred here. At the end of a road trip in which all expenses and driving are shared, there are no more debtors or creditors than there were at the beginning of the trip.

*Fourth*, the government has not identified a single case from the Board of Immigration Appeals or the federal courts of appeals that has endorsed its interpretation of the statute—namely, that one may be tagged as a smuggler of aliens without committing a single affirmative illicit act. Nor did the IJ's two-page opinion cite a single case in support of its decision—and this after taking Tapucu's lawyer to task for "not submitt[ing] any cases which directly support" his client's position. IJ Decision at 2. While the case reporters are not filled with decisions directly construing the provision, that makes it all the more puzzling why the IJ engaged in so little analysis of this issue and even more puzzling why the Board invoked its affirmance-without-opinion procedure. (More on that later.) The salient point is that the reported cases, whether directly construing the provision or not, all are one step removed from the fact pattern we have here, as indeed the government acknowledged at oral argument. There are no shared-driving-as-smuggling cases.

Consistent with the language of the statute, the cases all involve some form of affirmative assistance in the alien's illegal entry, something more than merely driving to a border station and presenting valid documents to customs officials. *See Landon v. Plasencia*, 459 U.S. 21, 23 (1982) (smuggler "agreed to transport the aliens to Los Angeles and furnished some of the aliens with alien registration receipt cards that belonged to her children"); *Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 852 (9th Cir. 2004) (smuggler "tried to evade inspection" while transporting six undocumented Mexican women into this country in his van); *Sidhu v. Ashcroft*, 368 F.3d 1160, 1163 (9th Cir. 2004) (smuggler agreed in advance to help a young man illegally enter the United States, guided him through immigration at the airport and was suspected of providing false documents); *Olowo v. Ashcroft*, 368 F.3d 692, 695 (7th Cir. 2004) (smuggler presented a plane ticket and birth certificate to officials on behalf of the illegal alien, both of which were in the name of a legal resident, then lied to immigration official that she was the illegal alien's mother); *Selimi v. Ashcroft*, 360 F.3d 736, 737 (7th Cir. 2004) (smuggler purchased falsified passports); *Lopez De Jesus v. INS*, 312 F.3d 155, 157 (5th Cir. 2002) (smuggler knowingly handed false documents to the immigration official); *United States v. Tsai*, 282 F.3d 690, 693 (9th Cir. 2002) (smuggler bought airline tickets for illegal aliens and did so using false names for the aliens); *Zhang v. INS*, 274 F.3d 103, 105 (2d Cir. 2001) (smuggler helped steer a boatload of illegal aliens across the ocean and admitted that he planned to enter the United States "surreptitiously"); *Witter v. INS*, 113 F.3d 549, 551 (5th Cir. 1997) (smuggler falsely stated she was married to the illegal alien and presented visas that were procured on the basis of the marriage, which had already been annulled); *Vasquez-Araujo v. Ashcroft*, 107 Fed. Appx. 155 (9th Cir. 2004) (unpublished) (smuggler drove illegal alien to border where alien presented a false birth certificate supplied by the daughter of the smuggler's girlfriend); *In Re L-- S--*, 22 I. & N. Dec. 645, 654 (BIA 1999) (smuggler drove illegal alien in a hidden compartment of a van); *In re Compean-Guevara*, 21 I. & N. Dec. at 52 (smuggler drove the illegal alien across the border and told the official that the alien was a U.S. citizen); *Matter of Contreras*, 18 I. & N. Dec. 30, 30–31 (BIA 1981) (smuggler attempted to re-enter the United States with a man concealed in the back of his vehicle); *Matter of Arthur*, 16 I. & N. Dec. 558, 558 (BIA 1978) (smuggler made "clandestine efforts" to transport illegal aliens across the border); *Matter of Valencia-Barajas*, 13 I. & N. Dec. 369, 370–71 (BIA 1969) (smuggler drove illegal aliens to a point along the Mexican side of the border, where they crossed surreptitiously and without detection, then picked them up on the American side of the border and hid them in his trunk); *Matter of Becerra-Miranda*, 12 I. & N. Dec. 358, 359 (BIA 1967) (smuggler instructed illegal aliens to wait at a point on the Mexican side until they saw his car on the American side, then to cross the border undetected, after which he would drive them away from the border); *Cortez-Acosta v. INS*, 234 F.3d 476, 483 (9th Cir. 2000) (*reversing* a § 212(a)(6)(E) deportation because court doubted that riding as a passenger in one of two vans, when the illegal alien was

in the other van, amounted to smuggling); *id*. ("It is not obvious how Mr. Cortez-Acosta's riding in the car without any illegal aliens would help to smuggle in the illegal alien in the other car.").

In a related context, our court has required something more than mere driving for a conviction under the criminal-alien-smuggling statute. *See* 8 U.S.C. § 1324(a)(1)(A)(ii) (prohibiting "knowing[ly] or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transport[ing], or mov[ing] or attempt[ing] to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law"). Interpreting the words "in furtherance of such violation of law," we "adopted an intent-based approach that requires the government to prove 'that the defendant wilfully transported an illegal alien with the specific intent of supporting the alien's illegal presence.'" *United States v. Perez-Gonzalez*, 307 F.3d 443, 445 (6th Cir. 2002) (quoting *United States v. 1982 Ford Pick-Up*, 873 F.2d 947, 951 (6th Cir. 1989)). As we explained:

> [I]n discerning this intent, the court should consider all credible evidence, both direct and circumstantial, such as 'whether the defendant was compensated for the transportation, . . . what efforts the defendant took to conceal or harbor the illegal aliens . . . [and] whether the illegal aliens were friends, co-workers, or companions of the defendant, or merely human cargo that was being shipped.' On the facts in *1982 Ford Pick-Up*, we found that the requisite intent was not present: the drivers were not being compensated; they made no attempt to hide the passengers or conceal the fact that they were illegal aliens; the aliens were traveling in hopes of finding employment rather than to evade detection; and the aliens were friends and relatives of the drivers.
>
> Looking to the present case, we find that there was sufficient evidence for a reasonable jury to conclude that Perez-Gonzalez wilfully transported illegal aliens with the specific intent of furthering their illegal presence in the United States. First, Perez-Gonzalez was to be compensated in the amount of $350 for his driving. Second, the intent to conceal the passengers is unmistakable: the van—though it was commercial—was entirely unmarked apart from its license plate; the glass in its passenger-area windows was hazed, preventing others from seeing inside; the van purposely departed late at night; the van took a longer route because that route was less patrolled by the INS than the more obvious route; and the cramped passengers were permitted to get out of the van only in small groups, to avoid creating suspicion. Third, Perez-Gonzalez did not know any of the passengers and they were treated very much like human cargo, even to the extent that their names were listed on a cargo manifest.

*Id*. at 445–46 (citations omitted). Comparable reasoning—which is to say, requiring an affirmative illicit act of assisting an illegal entry—ought to apply here.

*Fifth*, even if there were room for disagreement about the meaning of the smuggling provision, one must acknowledge that the compatibility of these facts with the words of the statute is less than obvious. It thus remains something of a mystery why the IJ and the Board dealt with the case in such summary fashion. True, it is not for us to tell the Board when it should apply its streamlining procedures, which in this case amounted to affirming without opinion the IJ's two-page opinion. *See Zheng v. Ashcroft*, No. 03-3184, 2004 U.S. App. LEXIS 26607, at *4 (6th Cir. 2004) (expressing "considerable doubt" about the assumption "that the decision to streamline may be reviewed"). But in a case like this it seems eminently appropriate in reviewing the IJ's decision to say that the government has not met its burden of establishing the facts necessary to prove smuggling or of giving a defensible explanation as to why shared driving equals smuggling. As for the facts, how does "substantial evidence" support the IJ's decision when Tapucu stated that he thought Deveci was permitted to enter the country as a Canadian citizen, when the IJ did not question his credibility and when the IJ never addressed this testimony? As for the law, the agency has given us nothing to which we can defer or for that matter that would even assist us in construing the provision. That is particularly problematic in view of the far-reaching consequences of the government's interpretation. If

shared driving equals smuggling, what of other innocuous forms of assistance? As the government acknowledged at oral argument, under its interpretation employment of a known illegal alien would amount to smuggling whenever the alien left the country and returned because the compensation provided by the employer would provide the requisite assistance—e.g., the necessary funds for a plane ticket or car rental. That position, in our view, raises more questions than it answers and above all fails to explain why such assistance rises to the level of what the statute requires—knowingly assisting the illegal re-entry itself.

III.

For these reasons, we vacate the decision of the IJ and remand the case for additional proceedings consistent with this opinion.

---

## DISSENT

---

McKEAGUE, District Judge, dissenting. I disagree with the majority's conclusion that Tapucu did not "knowingly . . . assist[] . . . [an] alien . . . to enter the United States in violation of law," under 8 U.S.C. § 1182(a)(6)(E)(i). The majority relies on Tapucu's testimony that he thought Deveci could lawfully reenter the country, and concludes the anti-smuggling statute requires something more than openly presenting an alien to border officials with accurate identification and citizenship papers. I believe that substantial evidence does support the IJ's conclusion that Tapucu was excludable from the U.S. and would affirm the decision of the Board.

First, the evidence in this case, both direct and circumstantial, supports the conclusion that Tapucu knew Deveci could not lawfully enter the U.S. *See Sanchez-Marquez v. U.S. INS*, 725 F.2d 61, 63 (7th Cir. 1984)(allowing proof by circumstantial evidence that petitioner knowingly assisted seven aliens to enter the U.S.). In *Vasquez-Araujo v. Ashcroft*, 107 Fed. Appx. 155 (9th Cir. 2004), the court upheld a Board decision to exclude petitioner where petitioner drove his alien-cousin over the border and petitioner knew his cousin could not legally enter the U.S. Tapucu arguably provided more assistance to Deveci than the smuggler in *Vasquez*.[1] Tapucu drove the van in an attempt to take Deveci, who he knew to be living in the U.S. illegally, over the border. If driving is not assistance under the smuggling statute, one is left to wonder what assistance means.

A person seeking admission as a visitor who intends to reside in the U.S. and who does not have a residence abroad is inadmissible to the U.S. *See* INA § 101(a)(15)(B), 8 U.S.C. § 1101(a)(15)(B). An alien must reside in a foreign country and not intend to abandon that residence to be admitted under this section. *Id*.

Tapucu knew that Deveci could not enter the U.S. lawfully as a visitor when his intent was to remain in the U.S. permanently. In response to an officer's question regarding how he expected Deveci to re-enter (the U.S.) lawfully, Tapucu responded that "[h]e did it before." The majority seemingly states that "it" modifies "lawfully," and therefore, Tapucu thought Deveci had the right to enter the U.S. lawfully and was not knowingly assisting his entry in violation of law. However, Tapucu's next statement, "I don't know how, but he did it," supports the IJ's conclusion. Tapucu's second statement tends to show that he knew Deveci had crossed the border unlawfully in the past and that Tapucu did not know how Deveci did it, or that he did not know how he thought Deveci would sneak past immigration officials on that occasion as well. Furthermore, following the majority's reasoning, any alien who drives another alien openly to the border, without compensation, and claims that he thought the alien could enter the U.S. legally could escape scot-free.

The majority correctly states that a mistaken belief regarding Deveci's entry to the U.S. would be a defense to ineligibility for a suspected smuggler. *See* 9 U.S. Department of State Foreign Affairs Manual § 40.65 n.4 (1995)(interpreting "knowingly" under the smuggling statute). Under the facts of this case, it is clear that any "belief" Tapucu had pertaining to Deveci's entry being legal was at best objectively unreasonable. While Tapucu's knowledge of Deveci's illegal U.S. residence and his periodic employment of Deveci may not prove his intent by itself, it does tend to make it more likely that any belief regarding the legality of Deveci's entry into the U.S. would be unreasonable.

---

[1] The majority characterizes Tapucu's action as "shared driving," and states that there are no "shared-driving-as-smuggling-cases." Under this reasoning, however, a potential smuggler could escape the reach of the smuggling statute by allowing his passengers to "share" in the driving throughout the trip.

Second, the majority's conclusion that Tapucu must have committed a "compensable" act is unwarranted. The statute once required that an alien provide assistance "knowingly and for gain," but Congress deleted the "for gain" language from the statute with the passage of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978; *see also*, *Matter of Compean-Guevara*, 21 I. & N. Dec. 51, 52-55 (BIA 1995). The words of the statute are clear; there is no requirement that petitioner commit a "compensable" act. In stating that petitioner must commit a "compensable" act, the majority seems to read a requirement into the statute that Congress specifically removed.

Third, while Tapucu may not fit the stereotypical image of an alien "smuggler," the fact that Tapucu took no steps to conceal Deveci is not relevant in determining whether Tapucu was excludable. *See* 8 U.S.C. § 1182(a)(6)(E)(i); *see also*, *Compean-Guevara*, 21 I. & N. Dec. 51, 52-55. Tapucu had to knowingly commit one of the acts listed in the statute. While the majority cites Webster's Third New International Dictionary for the proposition that Tapucu was not a smuggler because he did not attempt to get Deveci into the U.S. secretly or illicitly, the words of the statute are clear. There is no requirement that one do anything "secretly" or "illicitly," in order to be convicted under the statute. *Id*; *see also De Jesus v. INS*, 312 F.3d 155, 161 (5th Cir. 2002)(recognizing that one need not smuggle surreptitiously or by evading inspection to be excluded under the statute). Furthermore, Webster's Third New International Dictionary also defines smuggling as "bring[ing] into or tak[ing] out of a country contrary to law and with a fraudulent intent." Webster's Third New International Dictionary 2153 (2003). Tapucu attempted to do exactly what Webster's defines as smuggling as he drove Deveci to the border hoping Deveci would enter the U.S. illegally. *Id.*

Fourth, I do not agree with the majority's interpretation of *United States v. Perez-Gonzalez*, 307 F.3d 443, 445 (6th Cir. 2002)(interpreting the criminal alien smuggling statute). In affirming the district court's refusal to grant defendant an acquittal, the court looked at all the credible evidence available. *Id*. True, the court did find that the defendant hid passengers in his car and was compensated for his services. However, the court in *Perez-Gonzalez* did not hold that something more than driving is required to be guilty under the criminal-alien-smuggling statute. Rather, the court reiterated its prior holding in *United States v. 1982 Ford Pick-Up*, 873 F.2d 947 (6th Cir. 1989), stating that it is necessary to look at all credible evidence in discerning intent.

While I recognize this is a close case, I believe substantial evidence supports the IJ's conclusion that Tapucu knowingly assisted Deveci's attempted illegal entry into the U.S. Tapucu never stated that he thought it was legal for Deveci to cross the border. Tapucu attempted to drive Deveci across the border, knowing he did not have a legal right to live in the U.S., and knowing Deveci was seeking entry as a temporary visitor when he had no intention of returning to Canada. Tapucu employed Deveci and sent the checks to Deveci's mother in her name. Tapucu failed to reveal Deveci's status as an illegal immigrant to the officers in hopes of helping him enter the U.S., a fact of which Tapucu was admittedly aware. All the evidence in this case, when viewed together, supports the conclusion that Tapucu knowingly assisted Deveci's attempted entry into the U.S. within the meaning of 8 U.S.C. § 1182(a)(6)(E)(i). Therefore, because I believe that substantial evidence supports the IJ's conclusion that Tapucu is excludable from the U.S., I respectfully dissent.