**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0395n.06**
**Filed: June 7, 2006**

**No. 05-3232**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **NOVUTHY TRAM,** | ) | |
| | ) | |
| Petitioner, | ) | On Petition for Review of |
| | ) | Decision of Board of |
| v. | ) | Immigration Appeals |
| | ) | |
| **ALBERTO R. GONZALES,** | ) | |
| **United States Attorney General,** | ) | **MEMORANDUM   OPINION** |
| | ) | |
| Respondent. | ) | |

**Before**: **SUTTON and McKEAGUE, Circuit Judges; and CALDWELL, District Judge.**[*]

**KAREN K. CALDWELL, District Judge.**  Petitioner Novuthy Tram, a Cambodian citizen,

seeks judicial review of an Order of the Board of Immigration Appeals (the "Board") affirming the

Immigration Judge's denial of Tram's application for withholding of removal under the Immigration

and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*., and under the Convention Against Torture and

Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), see 8 C.F.R. § 208.16(c).  For

the following reasons, we affirm the Board's decision.

Tram was born in Cambodia in 1965. In 1995, he was living in Thailand where he studied

electrical engineering. He came to the United States in August, 1996.  He was admitted as a

nonimmigrant visitor for pleasure with authorization to remain in the United States until February

---

[*]The Honorable Karen K. Caldwell, United States District Judge for the Eastern District
of Kentucky, sitting by designation.

4, 1997.  In 1997, while in the United States, Tram married Carolyn Overstreet, a U.S. citizen. On February 26, 1997, Overstreet filed a Petition for Alien Relative on Tram's behalf with the former Immigration and Naturalization Service (the "INS").[1]  On October 29, 1997, Overstreet signed a sworn statement stating that a friend had offered her $2,000 to marry Tram.  Overstreet also filed a statement with the INS stating she wished to withdraw her petition filed on Tram's behalf.

On February 4, 2003, the INS denied Tram's application for status as a permanent resident because it was based solely on Overstreet's withdrawn petition.  On September 8, 2003, Tram filed an Application for Asylum and Withholding of Removal with supporting documents. With his application, Tram sought a voluntary departure and withholding of removal under both the INA and CAT. Tram asserted that, if he returned to Cambodia, he would be killed by members of the ruling Cambodian People's Party (CPP) because he had been an active member of the opposition Sam Rainsy Party (SRP) since 1995 at which time he was living in Thailand.  Tram asserted that the CPP had brutally killed many active SRP members.

In his application, Tram stated that in 1996, when he returned to Cambodia from Thailand on vacation, two men on a motorbike knocked him to the ground and that he was knocked unconscious for a few minutes.  He stated that three days later two men threatened him and stated, "[t]he motorbike hit was just a little warning, stop supporting this puppet of the French (Sam Rainsy Party) or this will happen to you again."  Tram claimed one of the men then pulled a pistol from under his shirt, pointed it at Tram and pulled the trigger but the gun was not loaded.

Tram further stated that the Communist Khmer Rouge regime killed his father, aunt, uncle

---

[1] The INS was abolished by the Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002), and its functions were transferred to the Department of Homeland Security.

and cousins in 1976 and 1977 because these family members were anti-Communist.  Tram stated that Cambodia's current Prime Minister, Hun Sen, was a member of the Khmer Rouge Party from 1975 to 1979.

Tram appeared before the IJ for a hearing on January 28, 2004.  Tram testified and called two additional witnesses:  Heng Hory who came to the United States in 1981 as a refugee from Cambodia and John F. Copper, a professor of International Studies at Rhodes College in Memphis, Tennessee and author of various books about Asia and international affairs.  Both testified that they believed that, if Tram returned to Cambodia, his life would be in danger because of his political affiliation with the SRP.

At the conclusion of the hearing, the IJ issued a decision denying Tram's application for withholding under the CAT and INA and his application for voluntary departure and ordered Tram removed to Cambodia.  The IJ based his decision on the findings that 1) Tram was not credible and 2) Tram had not shown a clear probability of persecution in Cambodia.

For his credibility determination, the IJ relied on Tram's admittedly fraudulent marriage. For his determination that Tram had not met the burden of proof for withholding of removal, the IJ noted evidence  that Cambodia had "begun the evolution into a democratic state" and that the SRP had been actively campaigning throughout the country and had garnered about 22 percent of the vote.  The IJ determined that Tram "is really not that different from the tens of thousands of SRP activists in Cambodia who have not been injured or who have not been taken into custody by the Cambodian government."  The IJ also noted that all of Tram's activities on behalf of the SRP had taken place either in Thailand or in the United States and not in Cambodia. The IJ  found that the evidence did not support the assertions of Tram and Copper that spies in the United States would

3

report Tram's activities abroad to the Cambodian government.

As for Tram's request for relief under the CAT, the IJ determined that Tram had not demonstrated that it was more likely than not that he would be tortured if he returned to Cambodia. The IJ noted that Tram himself had not been tortured by the Cambodian government. The IJ further stated that, based upon the evidence, he could not conclude that human rights are grossly, flagrantly, and massively violated in Cambodia.

Tram appealed the IJ's decision to the Board which adopted and affirmed the IJ's decision "insofar as the Immigration Judge determined that, based upon the evidence as a whole, the respondent failed to establish it is more likely than not that he will be persecuted or tortured in Cambodia." Tram then filed a Petition for Review with this Court.

Because the Board adopted the IJ's reasoning with respect to his finding that Tram failed to meet the burden of proof for withholding of removal under the INA and CAT, we review those aspects of the IJ's decision directly. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005).

However, the Board only adopted the IJ's decision "insofar as" the IJ determined that Tram had failed to establish it was more likely than not that he will be persecuted or tortured in Cambodia. The Board did not adopt the IJ's credibility determination. In determining whether Tram had met the burden of proof for withholding of removal, the IJ explicitly stated that he was "putting aside momentarily the credibility determination." Further, there is no indication in the IJ's opinion that, in determining whether Tram had presented sufficient evidence for withholding of removal, the IJ discredited Tram's testimony. Thus, this Court will not address the IJ's credibility determination.

This Court reviews the IJ's legal conclusions *de novo* and his factual findings for substantial evidence. *Tapucu v. Gonzalez*, 399 F.3d 736, 738 (6th Cir. 2005). In order to reverse the IJ's factual

determination, this Court must find "that the evidence not only supports a contrary conclusion, but *compels* it." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6ᵗʰ Cir. 2004)(citation omitted). The agency's decision must be upheld if it is supported by substantial evidence on the record as a whole, even if this court might have decided the case differently. *Koliada v. INS*, 259 F.3d 482, 486 (6ᵗʰ Cir. 2001). A denial of withholding of removal is reviewed under the substantial evidence standard. *Allabani v. Gonzales*, 402 F.3d 668, 674 (6ᵗʰ Cir. 2005).

An applicant is entitled to withholding of removal under the INA if he establishes that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b). The applicant must prove that a "clear probability" exists that he will be subject to persecution in the proposed country of removal. *Singh*, 398 F.3d at 401.

Tram presented evidence that political violence exists in Cambodia and that SRP activists and candidates are a primary target of such violence. For example, Tram presented a 2003 State Department report stating that 22 political activists and candidates had been killed in the three years preceding the 2002 local elections, some of which were SRP members. However, a 2002 State Department report submitted by Tram stated that there was no centrally organized campaign of violence or intimidation in Cambodia and that most such incidents were the work of local officials. Further, a 2003 Human Rights Watch briefing paper submitted by Tram stated that the SRP's frequent claims of politically motivated killings or threats often prove to be unfounded.

Moreover, the evidence showed that the SRP has active supporters and candidates in Cambodia. For example, a 2002 Human Rights Watch report stated that, as of 2002, the SRP held 15 of 122 seats in the National Assembly and in the 2002 elections, the SRP fielded approximately

23,000 candidates compared to the CPP's approximately 25,000 candidates. Thus, the IJ correctly determined that the issue was whether Tram had presented sufficient proof that he would be targeted for political violence in Cambodia when thousands of other SRP supporters had not.

On this issue, Tram points to his testimony regarding the motorbike incident and the subsequent threat by a man brandishing a gun. However, this was a single incident and occurred in 1996 – approximately 10 years ago. The evidence presented to the IJ showed that much has changed in Cambodia since 1996. For example, the 2002 State Department report stated that the country had undergone national elections since that time and achieved political stability through a coalition government.

Tram also cites the fact that, in 1976 and 1977, his father and other family members were killed because they were against the Communist Khmer Rouge regime. But the 2002 State Department report states that the Khmer Rouge is no longer a political or military threat in Cambodia. While the evidence showed that the current Cambodian Prime Minister was a member of the Khmer Rouge party in the 1970s, there was no evidence indicating that Tram faced any current danger due to the anti-Communist sentiments of his family members. In fact, Tram testified that his brother is a member of the SRP and continues to live in Cambodia, and Tram agreed that it is safe for his brother to live there.

Finally, Tram presented no evidence that Cambodians responsible for acts of political violence are aware of his activities on behalf of the SRP. He engaged in no such activities while in Cambodia and, in fact, did not join the party until after leaving Cambodia. While living in the United States, Tram has acted as the party's Tennessee representative and attended party conferences. Tram also presented evidence that his photograph has appeared on an SRP website. Nevertheless, there

6

was no evidence that any Cambodians who are responsible for acts of political violence conduct any surveillance of the SRP or of Cambodians living in the United States. The IJ correctly found that Tram and Copper had only speculated that spies in this country would report his party activities to the Cambodian government.

Thus, the IJ's finding that Tram failed to prove that there was a clear probability that his life or freedom would be threatened if he is removed to Cambodia is supported by substantial evidence. The evidence certainly does not compel a conclusion to the contrary. Accordingly, the IJ's denial of Tram's application for withholding of removal under the INA must be affirmed.

An applicant is entitled to withholding of removal under the CAT if he establishes that it is "more likely than not" that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). Torture is defined as, "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person" for such purposes as obtaining information or a confession from him or punishing, intimidating or coercing him when such pain or suffering is done by or at the instigation, consent or acquiescence of a public official or other person acting in an official capacity. 8 C.F.R. § 208.18(a)(1). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2).

Tram relied on the same facts in support of his application for removal under the CAT as he had in his application for removal under the INA. Just as these facts do not compel a conclusion that Tram was entitled to withholding of removal under the INA, these facts do not compel a conclusion that Tram is entitled to withholding of removal under the CAT. On appeal, Tram argues that his testimony that an unidentified man pointed a gun at him and pulled the trigger constitutes proof that

7

he was subjected to "mental torture" in Cambodia. This single incident occurring in 1996 does not support a finding that Tram has been tortured as that term is defined under the CAT. Further, Tram presented no evidence that the man who held the gun was a "public official" or a "person acting in an official capacity" as is required for withholding of removal under the CAT.

For these reasons, the Board's decision is hereby **AFFIRMED** and Tram's petition for judicial review is **DENIED.**