NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0784n.06
Filed: October 23, 2006

No. 05-3505

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GJERGJ KALAJ; ROZE KALAJ; AURELA
KALAJ; ELVIS KALAJ; JOLANDA KALAJ,

    Petitioners,

v.

ALBERTO R. GONZALES, Attorney General,

    Respondent.

        /

On Petition for Review of an Order of the Board of Immigration Appeals.

BEFORE:    RYAN and COOK, Circuit Judges; GWIN, District Judge.[*]

    RYAN, Circuit Judge.    The petitioners, Gjergj Kalaj, Roze Kalaj, Aurela Kalaj, Elvis Kalaj, and Jolanda Kalaj (Kalaj, et al.), appeal an order of the Board of Immigration Appeals (BIA) adopting and affirming an Immigration Judge's (IJ) denial of their claim for asylum, withholding of removal, and protection under the Convention Against Torture. Because we find substantial evidence supports the IJ's decision, we **DENY** Kalaj, et al.'s petition for review.

**I.**

    Kalaj, et al. are citizens of Albania. Gjergj and Roze are husband and wife; the other petitioners are their children. They entered the United States as a group, gaining entry without inspection at Brownsville, Texas, on or about June 12, 2001. Kalaj, et al.

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

were apprehended during their illegal entry, and the next day the Immigration and Naturalization Service (INS) served them with notices to appear at deportation hearings. Kalaj, et al. filed a petition for asylum, a claim for withholding of removal, and a claim for protection under the Convention Against Torture. Evidence was submitted in support of these claims.

Gjergj testified that he was a member and regional "secretary" of the Democratic Party in Albania and that as a result he and his family were persecuted. The first incident of persecution occurred on the 13th or 14th of September 1998, when he raised a caravan for the funeral of a prominent member of the Democratic Party who had been assassinated. Gjergj testified that two "shiks" or secret police threatened that he would "pay with [his] own life" if he continued in the funeral march and that he was "grabbed . . . by the arm and pushed." The funeral march soon descended into a riot during which shops were looted. A second incident occurred on March 20, 1999. Gjergj claims that on this date he gave a ten minute speech to a crowd of 120 people concerning the upcoming elections in 2000. Afterwards, he was detained by the police and a group of "gang members" who forced him to the ground and beat and kicked him.

Gjergj testified that a third incident occurred on June 13, 1999. He claims he was beaten up on this occasion when he and a group of other Christians were stopped on their way to church services and he was injured by "kicks, rubber sticks, beating, [and] kicking." Lastly, Gjergj testified that on October 1, 2000, he was kicked and struck with the butt of a rifle during a "police" raid on a polling station. Gjergj was taken to a police station, where a doctor gave him two shots. He also claims to have been beaten twice at the station. After he was released, Gjergj went home and found that his wife had been "raped" while

he was gone. He also testified that while he was gone his son was threatened with kidnaping if Gjergj continued his political activities. He claimed that his wife and son would verify these events, but, in the end, neither of them gave any testimony. The petitioners presented several unsworn affidavits from members of the Democratic Party in Albania, a medical affidavit from a doctor, and a newspaper article with the following headline: "The democrat Gjergj Kalaj, forced to leave his country!"

After reviewing the evidence, the IJ found that Gjergj's testimony and the other evidence presented was not credible. As a result, he denied the petition for asylum, claim for withholding of removal, and claim for protection under the Convention Against Torture.

The IJ made several findings of fact. First, he found that neither of the 1999 incidents Gjergj mentioned during his testimony were included in his application for asylum and that he offered no plausible reason for their omission even after being questioned. In addition, the IJ noted that two signatures on separate documents purported to be that of "Fred Sterte" did not appear to match. A medical affidavit Gjergj submitted had the date changed from October 15, 2000, to October 1, 2000, and Gjergj could not account for who did this or when it was done. He could not explain what happened to the envelopes the documents from Albania were mailed in or even what color they were. The IJ further determined that other documentary evidence conflicted with Gjergj's testimony. For instance, Gjergj claimed that he paid money to the association of the former politically persecuted and obtained a receipt before he came to the United States, but the receipt is dated April 4, 2002—some months after Gjergj arrived in the United States on June 12, 2001. Lastly, the IJ noted that Gjergj's wife and son did not corroborate any of the persecution or threats they suffered individually even though they were available to testify,

and Gjergj himself disclaimed any firsthand knowledge of the events.  In addition to these findings regarding the evidence before him, the IJ also relied on the 2001 U.S. Department of State Profile of Asylum Claims and Country Conditions for Albania and the 2001 and 2002 U.S. Department of State Country Reports on Human Rights Practices, which stated that crime is still an issue in Albania, but that there are no indications that persecution on protected grounds is continuing.

Kalaj, et al. appealed the decision of the IJ to the BIA, but the BIA held that the IJ's determination was correct and that his findings of fact were not "clearly erroneous."  Kalaj, et al. now appeal that decision to this court.

## II.

"Because the BIA adopted the IJ's reasoning with respect to [Kalaj, et al.'s] . . . claims for asylum and withholding of removal, we review . . . the IJ's decision directly." Singh v. Ashcroft, 398 F.3d 396, 401 (6th Cir. 2005).  The IJ's legal conclusions are reviewed de novo, and the factual findings are reviewed for substantial evidence.  Tapucu v. Gonzales, 399 F.3d 736, 738 (6th Cir. 2005).  We must uphold the IJ's determination that an alien is not eligible for asylum when that decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks and citation omitted).  We may reverse the IJ only if "a reasonable factfinder would have to conclude that the requisite fear of persecution existed."  Id.

The Attorney General has discretion under the Immigration and Nationality Act (INA) to grant asylum to a "refugee."  8 U.S.C. § 1158(b)(1)(A).  The INA defines a "refugee" as an alien who is "unable or unwilling" to return to his country of origin "because of

persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant for asylum must carry the burden of establishing that the "well-founded fear of persecution" is "both subjectively genuine and objectively reasonable." Akhtar v. Gonzales, 406 F.3d 399, 404 (6th Cir. 2005) (internal quotation marks and citation omitted).

To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), the applicant "must establish a clear probability of persecution" by showing that it is more likely than not that he will be persecuted. INS v. Stevic, 467 U.S. 407, 413 (1984). Similarly, to qualify for withholding under the Convention Against Torture, the applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The torture, however, need not be on account of a protected ground. Castellano-Chacon v. INS, 341 F.3d 533, 551-52 (6th Cir. 2003).

Kalaj, et al. divide their brief into two issues. First, they argue that the IJ and the BIA erred in finding that they did not establish a "well-founded fear of persecution." The arguments they present, however, do not resolve the multiple discrepancies upon which the IJ based his credulity findings and his final conclusion. For example, Kalaj, et al. claim that the 2002 U.S. Department of State Country Report on Human Rights Practices actually supports their claim. But the reports, while acknowledging that there are abuses and a high rate of crime in Albania, clearly state that there are no confirmed reports of disappearances, detentions, or imprisonment based on political motivations. The petitioners also argue that Gjergj's testimony was not "vague" in respect to the persecution

suffered by his wife and son.  The IJ's  finding, however, appears amply supported by Gjergj's own statement that he did not personally "know" what happened, but that his "son might tell."

The petitioners next argue that the IJ engaged in "sheer speculation" as to the validity of documents submitted because the findings were not based on any evidence introduced by the government or through expert testimony.  Neither argument is convincing.  An IJ has the authority, indeed, the duty, to evaluate evidence submitted to him or her and reject that evidence if it is found not credible, especially when a petitioner fails to sufficiently explain obvious document tampering or manifest inconsistencies. Selami v. Gonzales, 423 F.3d 621, 625 (6th Cir. 2005).  The IJ questioned Gjergj, but he offered no explanation to account for changes made to the documents or other inconsistencies on the face of the documents.

The last argument the petitioners make in support of their first issue is that the IJ was derelict for not "aid[ing] in the development of the record of an asylum claim."  Even were this court to hold with the Ninth Circuit, Jacinto v. INS, 208 F.3d 725 (9th Cir. 2000), that an IJ in an adversarial hearing must "develop the record" according to a rule developed for non-adversarial social security hearings, that rule would not seem to apply here since the applicant did not appear "without counsel."  Id. at 734.  Further, it is apparent that this case differs from Jacinto since Gjergj not only testified but was questioned by the IJ, and, "most important," he had the opportunity to make a "statement" in support of his claim had he wished.  Id.  In view of these considerations and our

deferential standard of review, it is apparent that this court may not overturn the IJ's finding that there was no "well-founded fear of persecution."

As a second issue, Kalaj, et al. devote a small section of their brief to arguing that the IJ and the BIA erred in dismissing their withholding of removal claim and their claim under the Convention Against Torture because the evidence shows "it is more likely than not that [they] will be persecuted and tortured upon return to Albania." But this court has held that where the record does not compel the finding that the petitioners have a "well-founded fear of persecution," it is apparent that it also cannot compel the more stringent "clear probability" finding required for a withholding of removal claim under 8 U.S.C. § 1231(b)(3)(A). See Pilica v. Ashcroft, 388 F.3d 941, 951 (6th Cir. 2004). We are left, therefore, with the conclusion that substantial evidence supports the IJ's decision to deny Kalaj, et al. protection under the Convention Against Torture because the record fails to establish that it is "more likely than not" that Kalaj, et al. will be tortured if forced to return to Albania. 8 C.F.R. § 208.16(c)(2).

**III.**

For the above reasons, we **DENY** Kalaj et al.'s petition for review of the BIA's order.