NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0076n.06
Filed: January 24, 2008

No. 07-3041

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ELHADJ SECK,

      Petitioner,

v.

MICHAEL MUKASEY,

      Respondent.

On Appeal from the Board of Immigration Appeals

_____/

BEFORE:    RYAN, BATCHELDER, and GRIFFIN, Circuit Judges.

      RYAN, Circuit Judge.    The petitioner, Elhadj Seck, appeals an order of the Board of Immigration Appeals (BIA) adopting and affirming an Immigration Judge's (IJ) denial of Seck's claim for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  Because we find that substantial evidence supports the IJ's decision, we deny Seck's petition for review.

**I.**

      Elhadj Seck was born in the nation of Mauritania.  He claims he entered the United States without valid entry documents through JFK Airport in New York City on November 12, 2001.  However, Seck has not offered any corroborating evidence to verify that this was the actual date he entered the country.

On April 3, 2002, Seck filed an application seeking asylum and withholding of removal based on race, political opinion, and membership in a particular social group. He later amended his application to request protection under the CAT.

On July 26, 2003, the Department of Homeland Security served Seck with a "Notice to Appear" charging that he was subject to removal for entering the United States without valid documents. Seck did not challenge the factual allegations against him and conceded that he was subject to removal. An IJ conducted a hearing at which Seck and one other witness testified. The IJ found that Seck's testimony was not credible, and denied his application for asylum, withholding of removal, and relief under the CAT, although the IJ allowed Seck to depart voluntarily from the country. Seck appealed the IJ's decision to the BIA, which, as we have said, affirmed the IJ's decision. Seck then filed a timely petition for review in this court.

Mauritania is a country located in northwest Africa where the population and the political authority is dominated by White Moors. There is a strong and historically volatile tension between the White Moors and the minority ethnic groups inhabiting Mauritania that has given rise to a number of conflicts in recent years. One of the minority ethnic groups is the Wolofs, who speak their own language and share a cultural identity with the majority population in Senegal, across the Senegal River south of Mauritania.

Seck claims that as a Wolof living in Mauritania, he suffered a general fear of persecution on account of his ethnicity. He claims his parents were removed from Mauritania to Senegal when he was young, and that they later died in a refugee camp. Seck also claims his brother-in-law was killed because he supported Black Wolofs. Seck

testified that he was unable to earn a living wage by performing domestic chores in private residences in Mauritania on account of his Wolof ethnicity.

The essence of Seck's claim for withholding of removal and for protection under the CAT is that when he lived in the town of Nouakchott in Mauritania and sold pro-Wolof literature, he was persecuted because of his Wolof ethnicity, and if forced to return, he would be subject to similar persecution in the future.  Seck claims he was frequently mistreated and beaten by civilian White Moors, and claims that once, in September 2001, he was beaten so badly that he was taken to a hospital where he stayed for a couple of days to recover.

## II.

The Immigration and Nationality Act (INA) grants the Attorney General the discretionary authority to grant asylum to a "refugee."  8 U.S.C. § 1158(b)(1)(A).  A "refugee" is defined by the INA as an alien who is "unable or unwilling" to return to his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).  An asylum applicant bears the burden of establishing that his fear of persecution is well-founded and is both subjectively and objectively reasonable. See Akhtar v. Gonzales, 406 F.3d 399, 404 (6th Cir. 2005).

To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), an applicant must demonstrate that it is more likely than not that he will be persecuted if forced to return to the place from which he emigrated.  INS v. Stevic, 467 U.S. 407, 413 (1984).  In order to qualify for withholding of removal under the CAT, an applicant must "establish that it is

more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2).

Since the BIA adopted the IJ's reasoning with respect to Seck's claim for withholding of removal, we review the IJ's decision directly. Singh v. Ashcroft, 398 F.3d 396, 401 (6th Cir. 2005). In doing so, we review the IJ's legal conclusions de novo and review factual conclusions for substantial evidence. Tapucu v. Gonzales, 399 F.3d 736, 738 (6th Cir. 2005). We must uphold the IJ's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Koliada v. INS, 259 F.3d 482, 486 (6th Cir. 2001) (internal quotation marks and citations omitted). At the same time, we may reverse the IJ's decision only when the evidence compels a contrary conclusion. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992).

The basis for the IJ's decision to deny relief is that there were serious inconsistencies in the record Seck presented and that his testimony was not credible. The record raises significant questions about the truth of Seck's claims. He claims, for example, that for more than ten years, he lived in Nouakchott with his sister and brother, selling Wolof books on the streets, and that during this period, he was beaten and subjected to other forms of persecution.

The IJ attempted to test Seck's credibility by asking questions about the geography of Mauritania, and in particular, Nouakchott. The IJ was concerned that while Black Wolofs comprise a minority of the population in Mauritania, they are a majority in neighboring Senegal; therefore, it was necessary to make sure that petitioners like Seck, claiming to be from Mauritania, are not in fact from Senegal. The IJ asked Seck about the major street in Nouakchott, where many government buildings are located and where many political

protests have taken place. Seck was unable to recall the name of this street. The IJ also asked about the units of currency used in Mauritania and the name of the country's political leader. Seck did not know the answer to either question.

The IJ was troubled by the fact that Seck had not mentioned the September 2001 beating and hospitalization in his asylum application or during his interview with the asylum officer. The first account of this incident surfaced in Seck's amendment to his asylum application, filed more than two years after his initial application was filed. Likewise, the IJ found that Seck was unable to verify the authenticity of the documents he presented to corroborate his testimony, and that the documents could easily have been counterfeit. Neither could Seck recall the actual location of the hospital where he claimed to have stayed. The IJ concluded that Seck's claim simply lacked credibility, and Seck's petition was denied.

Seck argues that the IJ erred in asking the petitioner questions relating to his general knowledge of Mauritania and failed to take into account the fact that he was poor, homeless, and uneducated. Further, he alleges that it was improper for the IJ to have taken judicial notice of facts gleaned from his experience in handling prior cases. It is, of course, the IJ's duty to ferret out the truth and to determine whether the witness is testifying truthfully. Upon reviewing the record, we do not find any of the questions posed to the petitioner to be unfair or inappropriate.

There are, as the IJ found, many material inconsistencies in the claims Seck presented, and there is even an absence of convincing evidence that he emigrated from Mauritania. The IJ's adverse credibility determination was supported by substantial evidence.

**III.**

For the reasons stated, we **DENY** Seck's petition for review.